**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF PUERTO RICO**

| | |
|---|---|
| RODRIGUEZ-RIVERA et al | * |
| Plaintiffs | * |
| v. | *   Civil No. 06-1381 (SEC) |
| RIVERA-RIOS, et al | * |
| Defendants | * |

**OPINION and ORDER**

Pending before this Court is Defendants Pedro Toledo Davila ("Toledo"), Ariel Soto Cruz ("Soto"), Jose Morales Vazquez ("Morales"), and Jose Luis Calderon's ("Calderon") Motion for Summary Judgment (collectively "Defendants") (Dockets ## 143-144) and Plaintiffs' opposition thereto (Docket ## 161-163). After reviewing the filings and the applicable law, Defendants' motion for summary judgment is **DENIED.**

**Factual Background**

On April 13, 2006, Plaintiffs filed the instant suit against Defendants under Section 1983 and 1988 of the Civil Rights Act of 1964, the United States Constitution's Fourth and Eleventh Amendments, and Article 1802 of the Puerto Rico Civil Code, stemming from events occurred on April 15, 2005. In the complaint, Plaintiffs allege that Carlos Malavé-Colón ("Malavé") was arrested by Sgt. Hermenegildo Rivera-Ríos (Rivera-Rios) and agents José Meléndez-Meléndez ("Meléndez") and David Rodríguez-Franqui ("Rodriguez") (collectively "police defendants") in the Liberio Ortiz Public Housing Project, in Aibonito. Malavé was a drug addict, and immediately prior to his arrest, he had been in a car with two other addicts. It appears that, while he was in the car or exiting therefrom, he swallowed something that Rivera, Meléndez, and Rodríguez, who were patrolling the housing project, took to be drugs.

The police defendants intercepted Malavé and one of the other addicts outside the car. The third individual left the scene. They detained Malavé, and after having him under their physical control, allegedly beat him and punched him in the face, abdomen, back, and waist,

among other areas. As the beating progressed, the three police officers demanded that Malavé vomit the small bag of drugs that he had swallowed.

The police defendants then took Malavé to the Aibonito Police Department to be processed for drug possession charges. Malavé spent approximately three to four hours at the police station. While there, he complained of pain and requested medical attention. From the police station, Malavé was taken to court for a probable cause hearing. After determining that there was probable cause for arrest for drug possession, the judge ordered the police defendants to take him to the hospital. They complied with the judge's directive, and took Malavé to Hospital Menonita. After a few hours at Hospital Menonita, Malavé was transferred to the Puerto Rico Medical Center during the early morning hours of April 16, 2005. Some hours later on that same day, he died at the Medical Center. The cause of death, as later determined by the Medical Examiner, was hipovolemic shock, hemoperitoneo, laceration to the arm, and corporal trauma.

On May 21, 2008, Defendants filed the instant motion, alleging that (1) Plaintiffs failed to state a Section 1983 claim for which relief could be granted, (2) the claims against them should be dismissed because under Section 1983 there is no supervisory liability, and, as a result, (3) the supplemental state law claims should be dismissed, or, in the alternative, (4) they are entitled to qualified immunity. Docket ## 143-144.

**Standard of Review**

*R. FED. CIV. P. 56*

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ramírez Rodríguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005). In reaching such a determination, the Court may not weigh the evidence. Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994). At this stage, the court examines the record in the "light most favorable to the nonmovant,"

**Civil No. 06-1381 (SEC)**                                                                                      3

and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact in issue that is both genuine and material. Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted). "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005)(quoting Garside, 895 F.2d at 48 (1st Cir. 1990)); see also SEC v. Ficken, 546 F.3d 45, 51 (1st Cir. 2008).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990). Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact. Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (quoting from Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). "The non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue. . . . Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); Medina-Muñoz, 896 F.2d at 8 (quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989)) (holding that "[t]he

**Civil No. 06-1381 (SEC)** 4

evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.").

### Applicable Law and Analysis

Because the instant motion is for summary judgment, Defendants must comply with the requirements of Local Rule 56, and file a statement of facts, set forth in numbered paragraphs, and supported by record citations. See Local Rule 56(b). In turn, when confronted with a motion for summary judgment, the opposing party must:

> [s]ubmit with its opposition a separate, short, and concise statement of material facts. The opposition shall admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's statement of material facts and unless a fact is admitted, shall support each denial or qualification by a record citation as required by this rule. The opposing statement may contain in a separate section additional facts, set forth in separate numbered paragraphs and supported by a record citation...Local Rule 56(c)

Local Rule 56(e) further provides that "[a]n assertion of fact set forth in a statement of material facts shall be followed by a citation to the specific page or paragraph of identified record material supporting the assertion." Moreover, a "court may disregard any statement of material fact not supported by a specific record citation to record material properly considered on summary judgment." Local Rule 56(e). These rules "are meant to ease the district court's operose task and to prevent parties from unfairly shifting the burdens of litigation to the court." Cabán-Hernández v. Phillip Morris USA, Inc., 486 F.3d 1, 8(1st Cir. 2007). The First Circuit has held that when the parties ignore the Local Rule, they do so at their peril. See Ruiz-Rivera v. Riley, 209 F. 3d 24, 28 (1st Cir. 2000).

Upon reviewing the parties' filings, this Court finds that ¶¶ 1-10, 16-18 and 20[1] of Defendants' Statement of Uncontested Material Facts ("SUF") were admitted by Plaintiffs. However, statements ¶¶ 13-15 are not properly supported by the record. Specifically, Exhibit

---

[1] Defendants misnumbered the facts set forth after ¶ 8. As such, this Court will address all facts from ¶ 8 of Docket # 143, p. 2, with the correct numbering.

**Civil No. 06-1381 (SEC)**                                                                                             5

11, provided in support of statement ¶ 13, is missing from Defendants' attachments. Moreover, although Defendants provide that Exhibit 34 ("General Order 98-16 ") is attached in support of statements ¶¶ 14 and 15, said exhibit does not include "General Order 98-16 ," and instead, consists of "General Order 98-11." Finally, in statements ¶¶ 19 and 20, Defendants aver that Rivera Ruiz and Meléndez Meléndez have "no previous record that would demonstrate a pattern of civil rights violation at the time of the alleged events." However, the documents provided in support of said statement show that complaints had been filed against both officers for allegations of illegal arrests, and other civil rights violations.

Plaintiffs opposed. In statements ¶¶ 3-8, 12, 14, 15, 17, 20, and 21 of their opposition, they attempted to create controversy as to Defendants' SUF by proposing additional facts mingled together with Plaintiffs' opposition to Defendants' SUF, in clear contravention to Local Rule 56's mandate. See Docket # 162. Therefore, this Court will disregard the additional facts set forth by Plaintiffs at Docket # 162, in accordance with Local Rule 56, and First Circuit precedent. See Local Rule 56(c) However, Plaintiffs properly controverted statements ¶¶ 11 & 12. They also filed a "Statement of Contested Material Facts" (Docket # 163), wherein they raise material issues of fact on whether the arresting officers were properly trained in the management of suspects who swallow narcotics, and whether Defendants took the necessary steps, within the police department, to avoid this type of situation.[2]  Defendants did not oppose Plaintiffs' statement of contested material facts (docket # 163), as such, it is deemed unopposed.

Based on the foregoing, the uncontested facts are as follows:

---

[2] See Docket # 163, ¶¶ 18, 28, 30-32, 34, 39, 42-44, 46, 48-53. However, Plaintiffs did not provide specific record citations (page or paragraph), pursuant to Local Rule 56(e) for statements ¶¶ 2-17, 19-27, 29, 33, 35-38, 40-41, 45 & 47, as such, they are not supported by the record and are disregarded by this Court.

**Civil No. 06-1381 (SEC)**                                                                                                 6

In January 2005, Toledo was appointed as Puerto Rico Police Department's Superintendent. Defendants' SUF ¶ 1. From July 2004 to May 2004, Soto was the Director of the Aibonito Drug Division. Id. at ¶ 2 & 16. Between July 2004 and April 15, 2005, Soto offered nine monthly academies[3] to Rivera, Meléndez, Rodriguez, and other officers. Id. at ¶ 2. On March 2005, Morales was appointed as Director of the Drugs, Narcotics, Vice Control, and Illegal Firearms Bureau, and he offered two academies between the date of his appointment and April 15, 2005. Id. at ¶ 2 & 17. However, Morales was not Rivera, Meléndez or Rodriguez's direct supervisor. Id. at ¶ 5. Morales and Calderon were not present during the events that took place on April 15, 2005. Id. at ¶ 6 & 8. Calderon, Morales's direct supervisor, was the Auxiliary Superintendent of Criminal Investigations on said date. Id. at ¶ 7. On April 15, 2005, a working plan was conducted in the Aibonito Drug Division targeted at high crime areas. Id. at ¶ 9. Soto directed the working plan, and Rivera executed it. Id. at ¶ 10. General Order 98-16 was included in the agenda for the academy offered on March 23, 2005. Id. at ¶ 18. Rodriguez did not have a previous record which indicated a pattern of civil rights violations. Id. at ¶ 20.

*Section 1983 Claims*

Plaintiffs brought Defendants as supervisors of the police defendants, and Toledo "in his personal and individual capacity as head of the Puerto Rico Police Department and ultimate supervisor of all police members and the defendants." Docket # 1 at 5. They aver that Defendants failed to properly train, supervise, and discipline the police defendants regarding the use of violence in the course of an arrest, and specifically, handling cases where suspects swallow drugs. Therefore, they tacitly condoned the officers' conduct. In the motion for summary judgment, Defendants move for the dismissal of all claims on the grounds that there is no supervisory liability pursuant to Section 1983, that they are entitled

---

[3] The Police Department offers monthly academies or meetings about various topics related to the police force's work responsibilities and obligations.

**Civil No. 06-1381 (SEC)** 7

---

to qualified immunity, and as a result, the pendent state law claims must be dismissed.

In order for a plaintiff to have a viable claim under section 1983, he must show (1) that the conduct complained of was committed by a person acting under color of state law; and (2) that this conduct deprived the plaintiff of his rights, privileges, or immunities secured by the Constitution or laws of the United States. See Gutiérrez v. Cartagena, 882 F.2d 553, 559 (1st Cir. 1989). The second prong of the inquiry is two-folded: (1) there must be an actual deprivation of a federally protected right, and (2) the conduct complained of must have been causally connected to the deprivation. Id.

The law in this Circuit clearly states that a superior officer, such as Toledo, "cannot be held vicariously liable under [section 1983] on a *respondeat superior* theory." Maldonado v. Castillo, 23 F. 3d 576, 581(1st Cir. 1994). A supervisor can only be held liable for his own acts or omissions. Id. That is, in order for supervisory liability to attach, a plaintiff must allege that the supervisor's behavior demonstrates deliberate indifference to conduct that is violative of his constitutional rights and that this conduct was affirmatively linked to the subordinate's violative act or omission. Id. at 582. In other words, there is an element of deliberate indifference and one of causation. The "causation requirement can be satisfied even if the supervisor did not participate directly in the conduct that violated a citizen's rights... if the supervisor knew of, overtly or tacitly approved of, or purposely disregarded the conduct." Id. The necessary nexus may be found also if "there exists a widespread abuse sufficient to alert a supervisor to ongoing violations [, to the extent that] the supervisory is on notice and fails to take corrective action, say, by better training or closer oversight." Id. Furthermore, "isolated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise to show deliberate indifference." Id.

Finally, in order to find that a supervisor showed deliberate indifference, there must be an allegation of: (1) a grave risk of harm, (2) the supervisor's actual or constructive knowledge of that risk, and (3) his failure to take easily available measures to address the

risk. Robles v. Hoyos, 151 F. 3d 1, 7(1st Cir. 1998). In other words, it is "required that the supervisor had 'overtly or tacitly approved of, or purposely disregarded the conduct." Rodríguez Vázquez v. Cintrón, 160 F. Supp. 22d 204, 211(D. P.R. 2001) (citing Lipsett v. University of Puerto Rico, 864 F. 2d 881, 902-903 (1st Cir. 1988)). In this regard, "an important factor in determining whether a supervisor is liable to the extent he has encouraged, condoned ... or been deliberately indifferent to the behavior of a subordinate, is whether the official was put on notice of behavior which was likely to result in the violation of the constitutional rights of citizens." Rodríguez-Vázquez, 160 F. Supp. 2d at 211.

The first element (acting under color of state law) has not been disputed by either Defendant, and it is apparent from the complaint that all the appearing defendants were acting under color of state law. Moreover, taking as true all the facts alleged in the complaint, the police defendants' conduct clearly deprived Malavé of his constitutional rights. Therefore, Plaintiffs have met the requirements for a Section 1983 claim. Defendants contend that, even under said assumption, Plaintiffs have not met the requirements for the imposition of liability to supervisors under Section 1983. However, after reviewing the record, this Court finds that there are material issues of fact regarding Defendants knowledge of the police defendants' past behavior, and whether they are liable to Plaintiff under Section 1983 for their actions and omissions. As previously stated, at this stage, the court may not weight the evidence, and examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Based on the foregoing uncontested facts, this Court cannot grant Defendants' request without weighing the evidence. Therefore, Defendants' motion for summary judgment on this ground is **DENIED.**

*Qualified Inmunity*

Defendants also aver that under the doctrine of qualified immunity, they are immune from suit for money damages in their personal capacity. Qualified immunity is an affirmative defense against personal liability which may be raised by state officials. Whitfield v.

Meléndez-Rivera, 431 F. 3d 1, 6 (1st Cir. 2005). It "provides a safe harbor for public officials acting under the color of state law who would otherwise be liable under 42 U.S.C. §1983 for infringing the constitutional rights of private parties." Id.; see also Anderson v. Creighton, 483 U.S. 635, 638 (1987). In determining whether a defendant is entitled to qualified immunity, courts shall apply a three-part test: (1) whether the plaintiff has alleged a constitutional violation; (2) whether the law was clearly established that defendants' action violated a constitutional right of the plaintiff; and (3) whether a reasonable official would have understood that his actions violated a constitutional right." Rivera-Jiménez v. Pierluisi, 362 F. 3d 87, 93 (1st Cir. 2004); Jennings, 499 F.3d at 11.

At this stage, this Court has concluded that Plaintiffs have shown that material issues of fact regarding Defendants' knowledge of the police defendants actions, and the measures taken by them to avoid the same, are in controversy. It remains to be seen whether Defendants' acts or omissions violated Malavé's constitutional rights. Moreover, Defendants are sued both in their personal capacities and as the police defendants' supervisors. Therefore, Defendants' motion for summary judgment on this ground is **DENIED.** Since Plaintiffs' federal claims have not been dismissed, Defendants' request for the dismissal of the pendent state law claims is also **DENIED**.

**Conclusion**

Based on the foregoing, Defendants' motion for summary judgment is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 24th day of March, 2009.

S/ *Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge